# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JORGE JOSUE CARDONA-SANTIAGO et al.,** <br><br> **Plaintiffs** <br><br> **v.** <br><br> **CORRECTIONAL HEALTH SERVICES CORPORATION, INC. et al.,** <br><br> **Defendants.** | **CIVIL NO. 13-1348 (DRD)** |

## OPINION AND ORDER

Plaintiffs Jorge Josué Cardona-Santiago, Arelis Cardona-Santiago, Suhaily Cardona-Santiago, Joraily Cardona-Santiago, and Ana L. González in the representation of the minors Nahomi Cardona-González and Natshalie Cardona-González (collectively "Plaintiffs"), filed a Complaint against Defendants Correctional Health Services Corporation, Inc. ("CHSC"), Dr. Manuel Jimenez ("Dr. Jimenez") in his official and individual capacities, and José Negrón Fernández ("Negrón"), the Secretary of the Puerto Rico Department of Corrections and Rehabilitation (the "Department"), alleging civil rights violations and medical malpractice pursuant to section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit., 31 §§ 5141-42.  (Docket No. 1.) Plaintiffs essentially claim that Defendants committed medical malpractice and violated the Eighth Amendment rights of their late father, Jorge Cardona-Tomassini ("Cardona"), when they failed to provide Cardona with adequate medical treatment while he was under their custody and care.  (Id.)

Presently before the Court are two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and one informative motion requesting dismissal of the case due

Civil No. 13-1348 (DRD)

to Plaintiffs' failure to disclose an expert witness and report.  (See Docket Nos. 30, 34, and 36.)  In such motions, Defendants raise several contentions in which they argue that Plaintiffs' Complaint fails to state any claim upon which relief can be granted and also that it should be dismissed due to procedural errors on part of Plaintiffs.  Plaintiffs opposed said motions.  (See Docket Nos. 33 and 39.)  After reviewing the pleadings and pertinent law, the Court **GRANTS in part** and **DENIES in part** Defendants' motions at Docket Nos. 30, 34, and 36.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the children of Cardona, who before his passing in June, 2012, was housed as an inmate at the Guerrero Aguadilla institution of the Department and briefly at the Ponce 500 Medical Facility of the Department.  (Docket No. 1 ¶ 3.1.)  Defendant CHSC is a private corporation under contract with the Department to provide medical and health services to inmates under the Department's custody.  (Id. ¶ 3.3.)  During the time Cardona served his sentence of incarceration, CHSC administered all health services at the two aforementioned correctional institutions.  (Id. ¶ 3.1.)  Defendant Dr. Jimenez is a medical doctor who during all relevant times was the Medical Director at the Guerrero Aguadilla institution and was and still is employed by CHSC.  (Id. ¶ 3.4.)  Defendant Negrón is Secretary of the Department.  (Id. ¶ 3.5.)

Prior to his death, Cardona suffered from diabetes and neuropathy.  (Id. ¶ 4.1.)  Cardona's neuropathy was the result of damage to his peripheral or central nervous system that affected his feet, legs, and upper chest, causing him to have trouble walking due to his extreme sensitivity to touch.  (Id. ¶ 4.2.)  Prior to being committed to the custody of the Department, Cardona had part of his left foot amputated due to complications arising from these ailments, namely, severe nerve and bone damage.  (Id. ¶¶ 4.1, 4.4.)

Civil No. 13-1348 (DRD)

During the month of June, 2009, Cardona was hospitalized for twelve days for treatment of his partially amputated left foot and then returned to the Guerrero Aguadilla institution of the Department.  (Id. ¶ 4.5.)  While hospitalized, a lack of appropriate medication and treatment by the hospital caused Cardona's wound to open.  (Id.)  When Cardona returned to Guerrero, Plaintiffs allege that he received the same lack of care and appropriate medical treatment.  (Id. ¶ 4.6.)  For example, he received some, but not the most adequate cleaning and monitoring of his wound.  (Id.) Further, despite being aware that administering Cardona the pain medication Tramadol, which had been prescribed to him by outside doctors on numerous occasions, or a combination of Tramadol with Neurontin, would alleviate his pain considerably, Defendants denied him any Tramadol.  (Id. ¶¶ 4.6-4.8.)  Instead, Cardona was over-medicated with Neurotin, which barely had any effect on his severe pain.  (Id. ¶ 4.8.)  Dr. Jimenez personally ordered that the Tramadol be withheld and not administered to Cardona.  (Id.)  Despite intentionally refusing to administer Tramadol to Cardona to cause him to suffer pain, Defendants administered such drug to other inmates within the Guerrero institution.  (Id. ¶¶ 4.7-4.8.)

Additionally, for over a month and a half, Cardona requested from the medical personnel at Guerrero that he be provided with eye glasses for his loss of vision and crutches to enable him not to have to place all of his weight on his amputated foot while walking.  (Id. ¶ 4.9.)  Despite such requests, and the institution having such crutches available, the medical personnel refused to provide him with either glasses or crutches, noting that the refusal to provide crutches was per Dr. Jimenez's instructions.  (Id. ¶ 4.10.)  At some point, Cardona personally asked Dr. Jimenez about the requested crutches, and Dr. Jimenez answered that he would not provide him with them because he had seen Cardona walking at the Aguadilla Mall without a walking cane prior to his

3

Civil No. 13-1348 (DRD)

incarceration.  (Id. ¶ 4.12.)  Cardona eventually submitted a written request for both the crutches and glasses on July 30, 2010 after receiving many negative responses to his informal requests. (Id.)  When the Civil Action Corporation of Puerto Rico intervened, Cardona was finally furnished with crutches, but, by that time, Cardona's wound was open and not healing properly due to the lack of adequate treatment and medication.  (Id. ¶ 4.11.)

Cardona's wound began to deteriorate.  (Id. ¶ 4.13.)  At that point, Cardona requested that the medical personnel at Guerrero provide him with a podiatrist to have his amputated foot evaluated.  (Id.)  He made several requests over a period of approximately five months and the medical staff repeatedly responded that CHSC did not have such a specialist available within their staff.  (Id.)  Cardona also requested to be treated by outside hospital facilities and this request was denied.  (Id. ¶ 4.14.)  Eventually, Cardona was evaluated by a surgeon at the Rio Piedras Medical Center, who concluded that his foot potentially needed further amputation.  (Id. ¶ 4.15.)  Despite the surgeon's evaluation, Cardona needed further intensive treatment to attempt to prevent further amputation.  (Id. ¶ 4.16.)  As such, on numerous occasions, Cardona requested that another physician be consulted for a second opinion.  (Id.)  His requests were denied and the Guerrero institution showed once again the same proclivity of deliberate indifference toward Cardona's medical needs.  (Id.)

Furthermore, at some point the medical personnel of CHSC, under the direction of Dr. Jimenez, proposed that Cardona be treated in the detox unit of Guerrero.  (Id. ¶ 4.17.)  Cardona objected on the grounds that this unit was not adequate to treat his condition because it was unsanitary, had no air conditioning to prevent further growth of bacteria and germs, and was populated mainly by inmates that were experiencing the worst stages of the narcotics withdrawal

4

Civil No. 13-1348 (DRD)

symptoms.  (Id. ¶ 4.17,5.4.e.)  Despite his objections, Cardona was moved to the detox unit.  (Id.)  The unit only had one shower and one bathroom available at a time and the bathroom had mold and fungi growing in it.  (Id. ¶ 4.18.)  As such, Cardona was concerned about his wound suffering an aggravated infection.  (Id.)  Because of his concern, CHSC and Dr. Jimenez determined that Cardona had refused treatment.  (Id.)

Thereafter, on December 9, 2009, Cardona was taken to the Rio Piedras Medical Center where a physician specializing in infections evaluated him and disagreed that an additional amputation was necessary.  (Id. ¶ 4.19.)  The physician conducted further testing, including a bone scan, and found a serious infection.  (Id.)  Accordingly, Cardona was treated with antibiotics immediately.  (Id.)  Cardona spent approximately two weeks hospitalized at the Medical Center and underwent additional procedures, including the cleaning of his wound and the removal of dead skin and tissue.  (Id.)

Upon Cardona's return to Guerrero just before Christmas, Dr. Jimenez made clear that he either did not want to, or could not, care for Cardona at the Guerrero institution.  (Id. ¶ 4.20.)  Thereafter, Cardona was transferred to the Ponce 500 Medical Facility of CHSC.  (Id.)  At the Ponce facility, which is a relatively new, well-equipped facility with air conditioning, Cardona received better treatment and his foot began to heal.  (Id.)  For reasons unknown to Plaintiffs, Cardona was then transferred back to the Guerrero institution around January 1 or 2, 2010, where he reported that he was feeling better and his wound was showing improvement due to his treatment in Ponce.  (Id. ¶ 4.21.)  At Guerrero, Dr. Ramirez, whose first name is unknown, commented that he did not know why Cardona had been transferred back to Guerrero because his severe infection could be better treated at Ponce.  (Id. ¶ 4.22.)  Cardona was then returned to the

5

Civil No. 13-1348 (DRD)

Ponce institution on January 8, 2010, where he received intravenous antibiotics and his foot felt better although not completely healed.  (Id. ¶ 4.23.)

In October, 2009, Cardona filed suit in the United States District Court against CHSC, Dr. Jimenez, and Jesus González-Cruz, then Secretary of the Department, (Civil No. 09-2059 (FAB-MEL), and his counsel engaged a podiatrist to examine and treat Cardona.  (Id. ¶ 4.24.)  As a result of such treatment, Cardona's wound began to heal.  (Id.)  However, Defendants' efforts to mitigate the damages were short lived and soon returned to refusing proper medical treatment and Cardona's foot became infected once again.  (Id.)  Cardona passed away on January 25, 2012.  (See Docket No. 110, Civil No. 09-2059.)  That lawsuit was dismissed without prejudice on May 7, 2012 for failure to exhaust his administrative remedies while in the custody of the Department.  (See Docket No. 115, Civil No. 09-2059.)

Thereafter, Plaintiffs filed the present Complaint against Defendants, alleging civil rights violations and medical malpractice pursuant to section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141-42.  (Docket No. 1, filed May 6, 2013.)  Plaintiffs claim that Defendants violated Cardona's Eighth Amendment rights and committed medical malpractice by failing to provide the adequate medical treatment as described.[1]  (Id.)  Dr. Jimenez then moved this Court to dismiss

---

[1] Section 1983 does not address whether members of an estate can bring a cause of action under the statute on behalf of a decedent.  However, section 1988 has been interpreted by the United States Supreme Court as providing that survivorship issues are determined by state law.  See Diaz-Colon v. Toledo-Davila, 922 F. Supp. 2d 189, 198 (D.P.R. 2013); Rivera v. Medina, 963 F. Supp. 78, 84 (D.P.R. 1997) (citing Robertson v. Wegmann, 436 U.S. 584, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978)).  Under Puerto Rico law, the right of a victim of a tort to claim the damages he suffered up until his death constitutes a privately owned patrimonial property, which does not die with the person, but rather is transmitted at the time of death to his immediate heirs, who can claim it as part of their legitimate inheritance.  See Vaello-Carmona v. Siemens Medical Solutions, __ F.3d __, 2015 WL 1189542, at * 4 (1st Cir. March 17, 2015); Tropigas de P.R. v. Superior Court, 2 P.R. Offic. Trans. 816, 825 (1974) (citing Widow of Delgado, 1 P.R. Offic.

6

Civil No. 13-1348 (DRD)

Plaintiffs' claims against him in his individual capacity, arguing that Plaintiffs fail to allege that he inflicted cruel and unusual punishment upon Cardona to violate the Eighth Amendment.  (Docket No. 30.)  CHSC joined said motion.  (Docket No. 35.)  Negrón also moved to dismiss the <u>Complaint</u> against him in his official capacity, arguing that there are no factual allegations as to his involvement in the conduct that allegedly harmed Cardona and also that the Eleventh Amendment bars this claim against him.  (Docket No. 34.)  Lastly, CHSC moved to dismiss Plaintiffs' medical malpractice claim against it because Plaintiffs have failed to disclose an expert report to support said claim.  (Docket No. 36.)  Plaintiffs opposed said motions.  (See Docket Nos. 33 and 39.)

## II.     STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).  When addressing a motion to dismiss filed by a defendant under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "we accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff."  <u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009).  However, under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions."  <u>See</u> <u>Ocasio–Hernandez v. Fortuño–Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011) ("[I]n order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the

---

Trans. 823, 829-35 (1973)).  The federal courts have applied this reasoning to find that members of an estate also have standing to bring a section 1983 claim on behalf of the decedent.  <u>See, e.g.</u>, <u>Diaz-Colon</u>, 922 F. Supp. 2d at 198; <u>Rivera</u>, 963 F. Supp. at 84; <u>Mangual v. Toledo</u>, 536 F. Supp. 2d 127, 134 (D.P.R. 2008); <u>see also</u> <u>Vaello-Carmona</u>, 2015 WL 1189542, at * 4-5 (holding decedent's Law 44, Law 100, and Title I of the Americans with Disabilities Act claims are inheritable).  Accordingly, Plaintiffs rightfully bring their civil rights and torts claims against Defendants.

Civil No. 13-1348 (DRD)

allegations in the complaint are true (even if doubtful in fact).'") (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955).  Thus, a plaintiff must, present allegations that "nudge [his] claims across the line from conceivable to plausible" to comply with the requirements of Rule 8(a).  Twombly, 550 U.S. at 570, 127 S. Ct. 1955; see Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, 127 S. Ct. 1955 and Iqbal, 556 U.S. 662, 129 S. Ct. 1937.  "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action.  See Iqbal, 556 U.S. at 671-672, 129 S. Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements).  First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action.  Id. at 678, 129 S. Ct. 1937; Mead v. Independence Ass'n, 684 F.3d 226, 231 (1st Cir. 2012) ("Any statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded.").  "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'"  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step, the complaint "states a plausible claim for relief."  Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.  This second step is "context-specific" and

8

**Civil No. 13-1348 (DRD)**

requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate.  Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, 129 S. Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation."  Id. at 682, 129 S. Ct. 1937 (citing Twombly, 550 U.S. at 567, 127 S. Ct. 1955).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 680, 129 S. Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible."  Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 680, 129 S. Ct. 1937); see Twombly, 550 U.S. at 556, 127 S. Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted).  Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations,

9

Civil No. 13-1348 (DRD)

taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Sánchez v. United States, 671 F.3d 86, 92 (1st Cir. 2012) ("[W]e must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.") (internal quotations omitted). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno–Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; see Iqbal, 556 U.S. at 681, 129 S. Ct. 1937 ("To be clear, we do not reject . . . bald allegations on the ground that they are unrealistic or nonsensical . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (noting that the Twombly and Iqbal standards require District Courts to "screen[ ] out rhetoric masquerading as litigation").

Finally, the Court notes that "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). Notwithstanding, the elements of the prima facie case are relevant to a plausibility determination and "[t]hose elements are part of the background against which a plausibility determination should be made." Id.

10

Civil No. 13-1348 (DRD)

III.   **LEGAL ANALYSIS**

In addressing the parties' arguments set forth in the three motions and oppositions thereto, the Court will divide its discussion by examining each motion in turn, beginning with the two motions to dismiss and ending with CHSC's informative motion.

A.   Claims Against Dr. Jimenez and CHSC

In moving to dismiss Plaintiffs' section 1983 claim against him, Dr. Jimenez, in his individual capacity, along with CHSC joining, argue the following: (1) there are many allegations that are absent from the governing Complaint that were contained in Cardona's first complaint in his dismissed 2009 case, Civil No. 09-2059, that weigh against Plaintiffs' present allegations; (2) although many paragraphs in the Complaint reference Dr. Jimenez, only two—those alleging that he withheld pain medication and refused to provide Cardona with crutches—allege any particularized wrong by him against Cardona; (3) those two allegations, viewed separately or together, do not amount to cruel and unusual punishment under the Eighth Amendment; and (4) despite not specifically referencing Dr. Jimenez, the remaining allegations, namely, the failure to properly treat and cure Cardona's wound, failure to provide him with eye glasses, failure to allow him to see a podiatrist and obtain a second opinion regarding further amputation, and the unsanitary conditions of his confinement, fail to amount to cruel and unusual punishment under the Eighth Amendment.  (Docket No. 30 at 12-24.)  As noted above CHSC joined this motion, thereby joining these arguments on behalf of Dr. Jimenez in his official capacity.  (See Docket No. 35.)

Plaintiffs respond by arguing: (1) while they acknowledge that the complaint in Civil No. 09-2059 contained allegations not included in the present suit, those allegations have no bearing on the present case; (2) the Complaint sufficiently alleges facts to show that Dr. Jimenez violated

11

Civil No. 13-1348 (DRD)

Cardona's Eighth Amendment rights by failing to provide adequate medical care; and (3) because Dr. Jimenez was in charge of the Guerrero institution, he was deliberately indifferent to the sanitation of the facilities.  (Docket No. 33. at 4-8.)

### 1.  *Factual Allegations in Prior Case*

As a threshold matter, the Court briefly addresses Dr. Jimenez's attempt to bring to the Court's attention facts alleged in Cardona's prior cause of action that another court dismissed without prejudice at the pleading stage.  As articulated above, in addressing Dr. Jimenez's motion to dismiss, this court must accept as true all well-pleaded facts in the present <u>Complaint</u> and draw all reasonable inferences in favor of Plaintiffs.  <u>See</u> <u>Gargano</u>, 572 F.3d at 48.  This inquiry is in contrast with an analysis of the likelihood of success on the merits.  <u>See</u> <u>Sepúlveda-Villarini</u>, 628 F.3d at 30.  As such, the Court may not consider outside sources for factual allegations in analyzing Plaintiffs' <u>Complaint</u>; rather, the focus is on the facts as pleaded that are presently before this Court.  Accordingly, the Court will not consider any alleged facts from Civil No. 09-2059 in analyzing Dr. Jimenez's motion to dismiss Plaintiffs' <u>Complaint</u>.

### 2.  *Eighth Amendment Claim Against Dr. Jimenez*

Before analyzing the remainder of the parties' contentions, the Court will discuss the current state of the law upon which they shall be judged.[2]  The Court must first determine to what extent Dr. Jimenez was personally involved in the alleged conduct that Plaintiffs claim violated

---

[2] A claim brought under section 1983 has two elements: (1) the challenged conduct must be attributable to a person acting under color of state law and (2) that conduct must have deprived the plaintiff of a right secured by the Constitution or federal law.  <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997).  In the present case, the parties do not dispute that Defendants were acting under color of Puerto Rico law.  As such, the dispositive inquiry is whether Defendants violated Cardona's constitutional rights.

12

Civil No. 13-1348 (DRD)

Cardona's Eighth Amendment Rights.  Then, the court will examine those allegations to determine whether they sufficiently state an Eighth Amendment claim upon which relief can be granted.

### i.  **Supervisory Liability**

With respect to supervisory liability in a constitutional violation action brought under section 1983, the courts have held that "supervisors are not automatically liable for the misconduct of those under their command," Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000), because section 1983 does not provide for respondeat superior liability.  See Monell v. Dep't. of Social Servs., 436 U.S. 658, 693, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989).  As such, a supervisor like Dr. Jimenez may be found liable only on the basis of his own acts or omissions either by his direct participation in the unconstitutional conduct or through conduct that amounts to condonation or tacit authorization. Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).  If the supervisor is not personally involved, he may only be held liable where (1) the conduct of his subordinates results in a constitutional violation and (2) there is an "affirmative link" between his acts or omission and the conduct of his subordinates "in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence . . . amounting to deliberate indifference.'"  Id.; see also Gutierrez-Rodríguez, 882 F.2d at 562 (noting that there must be an "affirmative link" between the street-level misconduct and the action, or inaction, of supervisory officials); Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) ("When a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, 'administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety.'").

13

**Civil No. 13-1348 (DRD)**

1        Turning to the present case, as noted above, Dr. Jimenez concedes that the <u>Complaint</u>

2  alleges that he was personally involved in the withholding of Cardona's pain medication and the

3  refusal to provide Cardona with crutches until the Civil Action Corporation of Puerto Rico

4  intervened.   As such, the Court need not engage in an analysis to determine his personal

5  involvement with respect to those claims.   Plaintiffs also allege that Cardona was moved to the

6  detox unit of Guerrero under the direction of Dr. Jimenez.   This allegations easily satisfies the

7  affirmative link requirement because it is alleged that Dr. Jimenez ordered Cardona be treated in

8  that unit.   However, with respect to the remainder of the claims, namely, that Cardona received

9  some but not the most adequate cleaning and monitoring of his would, that he made several

10  requests for eye glasses, to see a podiatrist, and to have a consult with a second physician about

11  further amputation, Plaintiffs fail to allege that Dr. Jimenez had any involvement in this conduct or

12  had actual notice of any of these requests.   Indeed, Plaintiffs fail to identify any prison official who

13  is responsible for this conduct other than generally alleging that it was the medical personnel.   The

14  <u>Complaint</u> simply states that Cardona made such requests to the medical personnel at Guerrero, but

15  fails to allege that any of the requests were made to Dr. Jimenez, that he knew of them, or even

16  that any of the requests were formally made so that Dr. Jimenez would have reviewed them.

17  Therefore, Plaintiffs fail to allege any "supervisory encouragement, condonation or acquiescence'

18  or 'gross negligence . . . amounting to deliberate indifference'" on part of Dr. Jimenez with respect

19  to those claims.

20        Accordingly, the Court will only attribute the following allegations to Dr. Jimenez: (1)

21  failure to provide effective pain medicine; (2) failure to provide crutches; and (3) the decision to

22  move Cardona to the purported unsanitary detox unit for treatment.

23

24

14

Civil No. 13-1348 (DRD)

ii.   **Inadequate Medical Care and Conditions of Confinement**

When a person is incarcerated as a consequence of his own of actions, he may be deprived of rights that are fundamental to liberty.  The Constitution nevertheless demands that prisoners retain certain other rights, namely, "the essence of human dignity inherent in all persons."  Brown v. Plata, 131 S. Ct. 1910, 1928, 179 L. Ed. 2d 969 (2011).  The source of prisoners' right to treated with dignity while incarcerated is the Eighth Amendment to the United States Constitution.  That amendment states that prisoners are protected against the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  In interpreting the Eighth Amendment, courts have derived the principles that govern the medical treatment that prisoners must be afforded and established the permissible conditions under which they are to be held.  See Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).[3]

To succeed on Eighth Amendment claims based on inadequate medical care or conditions of confinement, or a combination of both, a plaintiff must satisfy both subjective and objective inquiries.  See Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).  The first inquiry requires the plaintiff to show that a prison official caused an "objectively, sufficiently serious," deprivation that "result[ed] in the denial of the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The second inquiry is a subjective one that requires the plaintiff to show that the prison

_____

[3] The Eighth Amendment applies to state action through the Due Process Clause of the Fourteenth Amendment.  Giroux v. Somerset Cnty., 178 F.3d 28, 34 (1st Cir. 1999) (citing Robinson v. California, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962)).  As such, the Eighth Amendment has been made applicable to the Commonwealth of Puerto Rico either through incorporation into the Fourteenth Amendment or as a result of the long history of its application in our District.  Morales Feliciano v. Rossello Gonzalez, 13 F. Supp. 2d 151, 204 (D.P.R. 1998); see also Santana v. Collazo, 714 F.2d 1172, 1175 n.1 (1st Cir. 1983) ("[w]e also assume that the Eighth Amendment applies to Puerto Rico, either directly or through the Fourteenth Amendment").

Civil No. 13-1348 (DRD)

official possessed a sufficiently culpable state of mind in which the official had "deliberate indifference" to the prisoner's health or safety.  Id.  Because the Supreme Court has articulated that the standards for both inadequate medical care and conditions of confinement claims are the same, the Court will analyze both of Plaintiffs' claims together, primarily focusing on Cardona's medical care, as the alleged conditions of his confinement are inextricably linked to his medical care.  See Helling, 509 U.S. at 32, 113 S. Ct. 2475.

In line with the aforementioned principles, the courts have developed in greater detail that to establish an Eighth Amendment violation arising out of inadequate medical care, a prisoner must establish a "deliberate indifference to [his] serious medical needs."  See Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) (en banc).  This is satisfied by proof that (1) the prisoner has a serious medical need for which he has not received adequate medical care, and (2) a prison official was deliberately indifferent to that need.  See Estelle, 429 U.S. at 106, 97 S. Ct. 285; Kosilek, 774 F.3d at 83.  The First Circuit has held that the subjective inquiry may overlap with the objective inquiry because similar evidence, including evidence of adverse effects, may be relevant to both components. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497-98 (1st Cir. 2011).

a.   Serious Medical Need

In discussing the objective inquiry, the First Circuit has held that "[a] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Leavitt, 645 F.3d at 497 (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990)).  "The seriousness of an inmate's needs may also be determined by reference to the

16

Civil No. 13-1348 (DRD)

effect of the delay of treatment." Leavitt, 645 F.3d at 497-98 (internal quotation marks omitted). Further, "[t]his prong does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing. . . .   Rather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'" Kosilek, 774 F.3d at 82-83.

With respect to Dr. Jimenez's failure to provide Cardona with the pain medication Tramadol by itself or in combination with Neurotin to considerably Cardona's alleviate pain, the Court finds that even a lay person would easily recognize the necessity for a doctor's attention to relieve a person's pain who is recovering from a partial foot amputation.  Indeed, a jury reasonably could infer that by treating Cardona with Neurotin, Dr. Jimenez recognized the severity of his medical need.  Further, an examination of the case law from courts within the First Circuit reveals that denying a prisoner effective pain medication amounts to inadequate medical care.  See, e.g., Villanueva v. Franklin Cnty. Sheriff's Office, 849 F. Supp. 2d 186, 191 (D. Mass. 2012) (holding prisoner sufficiently pleaded facts for Eighth Amendment claim when he alleged that he complained of severe pain for nearly four weeks and defendants did not take any actions to get him medical treatment, except to give him ineffective pain medication); Merch. v. Blaisdell, No. 09-CV-231, 2009 WL 3447245, at *3 (D.N.H. Oct. 16, 2009) (holding prisoner sufficiently pleaded facts to show that he was denied adequate medical care when he alleged that defendant stopped prescribing his pain medication and he suffered serious pain as a result); Dellairo v. Garland, 222 F. Supp. 2d 86, 91-92 (D. Me. 2002) (holding that prisoner's allegations that defendant knew about the severity of his condition and his ongoing pain but refused to provide treatment or pain relief was sufficient to survive a motion to dismiss).

Civil No. 13-1348 (DRD)

1

2    With respect to Dr. Jimenez's failure to provide Cardona with crutches, the Court finds that

3    here too even a lay person would easily recognize the necessity for a doctor's attention to an open

4    wound that resulted from a partial amputation of a person's left foot.   Further, because the

5    seriousness of Cardona's need may also be determined by reference to the effect of the delay of

6    treatment, the severity of his need and inadequacy of the treatment is even more apparent because

7    Plaintiffs allege that Cardona's wound remained open, did not properly heal, and had a serious

8    infection while Cardona did not have access to crutches.   See Leavitt, 645 F.3d at 497-98; see also

9    Dargie v. Cnty. of Hillsborough, No. 93-391, 1994 WL 260611, at *3-4 (D.N.H. Apr. 28, 1994)

10   (holding failure to provide prisoner with crutches when he sprained his right ankle and his other

     leg's prosthesis was broken constituted inadequate treatment of a serious medical need).

11   Moreover, to the extent that Dr. Jimenez argues that Cardona received adequate medical

12   care because he showed improvement when he was eventually treated at the Rio Piedras Medical

13   Center and Ponce 500 Medical Facility, the Court emphasizes the severity of Cardona's temporary

14   deprivation that is alleged by Plaintiffs.   See Smith v. Carpenter, 316 F.3d 178, 185-86 (2d Cir.

15   2003) ("where the prisoner is receiving appropriate on-going treatment for his condition, but,

16   instead brings a narrower denial of medical care claim based on a temporary delay or interruption

17   in treatment, the serious medical need inquiry can properly take into account the severity of the

18   temporary deprivation alleged by the prisoner").   Plaintiffs have alleged that while under the care

19   of Dr. Jimenez, Cardona experienced severe pain that could have been avoided and his wound

20   remained open and became severely infected.   Although "routine discomfort is part of the penalty

21   that criminal offenders pay for their offenses against society," the objective inquiry is grounded

22   upon the "contemporary standards of decency."   Hudson, 503 U.S. at 9, 112 S. Ct. 995.

18

23

24

**Civil No. 13-1348 (DRD)**

Accordingly, this Court finds that even the temporary withholding of medical care from a prisoner, when the impending harm is easily preventable and the effect of that denial results in severe pain and infection, constitutes inadequate treatment of a serious medical need.

Lastly, with respect to the alleged unsanitary conditions of the detox unit in which Cardona was being treated, the Court finds that requiring a prisoner with a serious open wound on his foot to clean himself in bathroom that has mold and fungi growing in it to be a "denial of the minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834, 114 S. Ct. 1970.  While the Court recognizes that "[t]he Constitution 'does not mandate comfortable prisons,'" Leavitt, 645 F.3d at 497, it "does [not] permit inhumane ones."  Id.  As such, requiring a prisoner to bathe himself in a facility in such a condition with such a serious medical condition offends "contemporary standards of decency," Estelle, 429 U.S. at 103, 97 S. Ct. 285, and thus amounts to an extreme deprivation.  Moreover, although Dr. Jimenez argues that Plaintiffs' claim fails at this juncture because the Complaint fails to allege that the unsanitary conditions led to Cardona's infection and complications, drawing all reasonable inferences in favor of Plaintiffs, it is reasonable to infer that Cardona's infection likely did not improve because of the unsanitary conditions of his confinement.

Accordingly, the Court finds that Plaintiffs sufficiently allege that Cardona's deprivation was of constitutional magnitude to satisfy the objective prong of the Court's inquiry.

### b.  Deliberate Indifference

The Court now turns to the second inquiry in Plaintiffs' constitutional claim.  Because an inadvertent failure to provide medical care is not actionable, even if negligent, the ultimate question is the state of mind of the defendant.  See Estelle, 429 U.S. at 105; Kosilek, 774 F.3d at

19

**Civil No. 13-1348 (DRD)**

82-83; <u>Layne v. Vinzant</u>, 657 F.2d 468, 471 (1st Cir. 1981).   For purposes of this subjective inquiry, deliberate indifference "defines a narrow band of conduct . . . and requires evidence that the failure in treatment was purposeful."   <u>Kosilek</u>, 774 F.3d at 83 (citing <u>Estelle</u>, 429 U.S. at 105, 97 S. Ct. 285 and <u>Feeney v. Corr. Med. Servs. Inc.</u>, 464 F.3d 158, 162 (1st Cir. 2006)).   In short, this inquiry requires that the prison official intentionally denies, delays, impedes, or interferes with the medical care that the prisoner needs.   See <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).   "The obvious case would be a denial of needed medical treatment in order to punish the inmate. . . .   While deliberate indifference may also be exhibited by a wanton disregard to a prisoner's needs . . . such disregard must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable."   <u>Kosilek</u>, 774 F.3d at 83.   As such, mere negligence of the kind that gives rise to a claim of medical malpractice does not evidence deliberate indifference on part of a prison official. See <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285.

The resolution of this matter is relatively simple.   With respect to Plaintiffs' claim that Dr. Jimenez failed to provide Cardona with effective pain medicine, Plaintiffs allege that not only did Dr. Jimenez personally order that Tramadol be withheld, but he refused to administer said medication to cause Cardona to suffer pain.   As such, this denial of needed medical treatment in order to punish Cardona clearly exhibits a wanton disregard to his serious medical needs and thus constitutes deliberate indifference on part of Dr. Jimenez.   See <u>Farmer v. Brennan</u>, 511 U.S. at 837, 114 S. Ct. 1970.

With respect to Dr. Jimenez's failure to provide Cardona with crutches, Plaintiffs allege that Cardona was denied crutches by the medical personnel per Dr. Jimenez's instructions, even though they had some available.   Further, when Cardona personally asked Dr. Jimenez about the

**Civil No. 13-1348 (DRD)**

requested crutches, Dr. Jimenez told him that he would not provide them to Cardona because he had seen him walking without crutches in the Aguadilla mall prior to his incarceration.  As such, these allegations show that Dr. Jimenez was aware of Cardona's serious medical need and nevertheless denied him the crutches to provide for that need, amounting to deliberate indifference on part of Dr. Jimenez.  Although Dr. Jimenez argues that he could not have exhibited deliberate indifference to Cardona's need for crutches because Cardona eventually obtained them, (Docket No. 30 at 20), the Court rejects this argument because Plaintiffs allege that Cardona only received them once the Civil Action Corporation of Puerto Rico legally intervened.

Lastly, with respect to Plaintiffs' claim regarding the conditions of Cardona's confinement in the detox unit, other than alleging that Dr. Jimenez was in charge of the institution that housed the unsanitary conditions to which Cardona was exposed and sent Cardona to that unit, Plaintiffs fail to allege that Dr. Jimenez was in fact aware of the conditions in the bathroom and that he nevertheless intentionally required Cardona to bathe himself in such conditions.  Despite this Court's finding when analyzing this claim under the first inquiry, it remains that inhumane prison conditions alone do not constitute an Eighth Amendment violation.  See Wilson v. Seiter, 501 U.S. 294, 303-04, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  There must be deliberate indifference on part of Dr. Jimenez to those inhumane conditions, which Plaintiffs have not shown.  This includes determining whether the facts alleged indicate that Dr. Jimenez exhibited criminal recklessness because Dr. Jimenez would have had to have known about the unsanitary conditions and made a conscious disregard to that risk.  Moreover, although Plaintiffs argue in their reply that Dr. Jimenez knew or *should have known* that exposing Cardona to the detox unit would threaten

Civil No. 13-1348 (DRD)

further infection of his wound, the Supreme Court has flatly rejected this argument of objective deliberate indifference. See Farmer, 511 U.S. at 837-38, 114 S. Ct. 1970.

Accordingly, for the reasons stated above, the Court finds that Plaintiffs have sufficiently pleaded a substantive plausible claim for relief based upon a violation of the Eighth Amendment against Dr. Jimenez in his individual and official capacity as to his failure to provide effective pain medication and his failure to provide crutches, but not as to the decision to move Cardona to the purported unsanitary detox unit for treatment, Cardona receiving some but not the most adequate cleaning and monitoring of his would, and his several requests for eye glasses, to see a podiatrist, and to have a consult with a second physician about further amputation.

c.   Remaining Allegations Against Dr. Jimenez and CHSC

The Court has already held that it could not hold Dr. Jimenez or CHSC liable for Plaintiffs' remaining claims because Plaintiffs have failed to identify the persons who allegedly violated Cardona's constitutional rights and only "persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable" under a section 1983 claim. Cordero-Suarez v. Rodríguez, 689 F.3d 77, 82 (1st Cir. 2012). Nevertheless, the Court notes that even if it was to consider those allegations, they fail to state an Eighth Amendment claim upon which relief can be granted.

First, the allegation that Cardona received some but not the most adequate cleaning and monitoring of his wound, is merely a bald and conclusory statement that the Court may discard in the first step of its analysis under the motion to dismiss standard. See Iqbal, 556 U.S. at 671-72, 129 S. Ct. 1937; Mead, 684 F.3d at 231. Second, in alleging that Cardona made several requests for eye glasses, Plaintiffs fail to allege any deliberate indifference to Cardona's medical need. As

22

Civil No. 13-1348 (DRD)

articulated above, inadvertent failure to provide medical care is not actionable, even if negligent. See Estelle, 429 U.S. at 105.  As such, this claim would fail on the second prong of the Court's inquiry.  Third, Plaintiffs' allegations that the medical personnel denied both Cardona's request to see a podiatrist and to obtain a second opinion about amputation also fail on the second prong. The federal courts have been reluctant to second guess medical judgments where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment.  See Feeney, 464 F.3d 158, 162 (1st Cir.2006); Bradshaw v. Corr. Med. Servs., Inc., 6 F. App'x 45, 46 (1st Cir. 2001).  "[W]hen a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment[, s]uch a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation."  Feeney, 464 F.3d at 162 (internal quotation marks omitted).  Plaintiffs acknowledge that the medical personnel were responsive to Cardona's request for a podiatrist by telling him that they did not have one available.  Further, not only do Plaintiffs fail to allege any wanton disregard to Cardona's needs by denying him a second opinion, but Cardona did indeed obtain a second opinion when he was evaluated at the Rio Piedras Medical Center.  Therefore, even if it could be said that failing to provide Cardona with a podiatrist and allowing him to obtain a second opinion earlier reflected poor judgment on the part of the medical personnel at CHSC, a matter that the Court does not decide at this juncture, these were not omissions that could be deemed "deliberate indifference to serious medical needs."  See id. at 163.

Accordingly, in light of the aforementioned reasoning, the Court **GRANTS in part** and **DENIES in part** Dr. Jimenez's motion to dismiss at Docket No. 30 in which CHSC joined.

23

Civil No. 13-1348 (DRD)

1

      B.    Claims Against Negrón in his Official Capacity

2

      In his motion to dismiss Plaintiffs' Complaint against him, Negrón argues that (1) the

3

Complaint fails to sufficiently state a claim against him because there are no factual allegations as

4

to his involvement in the actions allegedly committed against Cardona and (2) the Eleventh

5

Amendment bars suits against states and defendants in their official capacities for money damages.

6

(Docket No. 34 at 3.)  Plaintiffs respond by arguing that Negrón is not being sued for his personal

7

involvement in the facts of this case, but rather because of the Department's contractual

8

relationship with CHSC.  (Docket No. 39 at 4.)  Plaintiffs further aver that although as a general

9

matter, Negrón, in his official capacity, is immune from claims for monetary damages, the

10

Department may have waived sovereign immunity via the contract between it and CHSC, but such

11

waiver will not be known until discovery reveals the contract.  (Id. at 6.)

12

      The resolution of this motion is simple.  With respect to Negrón's first argument, the Court

13

notes that a suit against a public official in his official capacity is a suit against the governmental

14

entity itself.  Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005); Wood v. Hancock County

15

Sheriff's Dep't, 354 F.3d 57, 58 n. 1 (1st Cir. 2003).  In this case, Plaintiffs sued Negrón in his

16

official capacity.  Therefore, the claims against Negrón are claims against the Department, which

17

had custody of Cardona during the time the allegations forming this case took place.  Accordingly,

18

the Complaint need to specifically allege Negrón's personal involvement in this case.

19

      With respect to Negrón's second argument, the Court must briefly address the relevant

20

principles of a State's sovereign immunity.  The Eleventh Amendment bars lawsuits for monetary

21

damages against a State in federal court, unless said State has waived its immunity or unless

22

Congress has expressly overridden that immunity.  See Const. Amend. XI; Will v. Michigan Dep't

23

24

Civil No. 13-1348 (DRD)

of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  "A [S]tate's consent to suit in the federal courts must be unequivocally expressed. . . .  It must be stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."  Acevedo Lopez v. Police Dep't of Com. of Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001) (citations and internal quotation marks omitted; emphasis in original).  Moreover, for a State to waive its Eleventh Amendment immunity, it must also specify the State's intention to subject itself to suit in *federal court*.  Id.  Such a waiver may be effectuated by a State statute or constitutional provision, or where a State otherwise waives its immunity to suit in the context of a particular federal program.  Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238 n. 1, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985).  The First Circuit has held on numerous occasions that "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects."  Id.; Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006).  "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc."  Culebras Enterprises Corp. v. Rivera Rios, 813 F.2d 506, 516 (1st Cir. 1987) (citing Ramirez v. P.R. Fire Service, 715 F.2d 694, 697 (1st Cir. 1983) and Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (emphasis in the original).

Turning to the facts of this case, although it is not in dispute, the Department is entitled to Eleventh Amendment immunity because it is an executive agency of the Commonwealth of Puerto Rico.  See Caraballo v. Puerto Rico, 990 F. Supp. 2d 165, 173 (D.P.R. 2014); see also Kentucky v. Graham, 473 U.S. at 169, 105 S. Ct. 3099 (holding that the Eleventh Amendment bar suits for

25

Civil No. 13-1348 (DRD)

monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacity).  On the other hand, the Court agrees with Plaintiffs that dismissal of the claims against Negrón is not appropriate at this juncture, as discovery may reveal that the Department waived it's immunity in the contract between the Department and CHSC, in which CHSC is to provide medical and health services to the inmates under the custody of the Department.  See Trans Am. Recovery Servs., Inc. v. Puerto Rico Mar. Shipping Auth., 850 F. Supp. 103, 110 (D.P.R. 1994) (noting in language in a contract could constitute waiver of sovereign immunity). District courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013).  As such, "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." Id.  Therefore, it is reasonable to expect that "modest discovery may provide the missing link" for this disputed issue. Id. at 105.

Accordingly, in light of the aforementioned reasoning, the Court **DENIES** Negrón's motion to dismiss at Docket No. 34.

C.   Medical Malpractice Claim Against CHSC

In its motion to this Court, CHSC asks the Court to take notice that Plaintiffs have failed to disclose an expert report, with which they intend to support their claims for medical malpractice against CHSC, and, as such, that dismissal of said claim is warranted.  (Docket No. 36 at 2-3.) CHSC further asks this Court that should it find that dismissal is not warranted at this juncture, that it impose a deadline upon Plaintiffs to produce the expert report.  (Id. at 3.)  Plaintiffs respond by arguing that although it concedes that as a general matter, under Puerto Rico law, evidence from

26

**Civil No. 13-1348 (DRD)**

experts is required to prosecute a medical malpractice claim like the one in this case, Plaintiffs need not have produced such a report at this stage in the litigation.  (Docket No. 39 at 6-7.)

Puerto Rico's medical malpractice law derives from its general negligence statute, which states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. LAWS ANN. tit. 31, § 5141; see Diaz Aviation Corp. v. Airport Aviation Servs., Inc., 716 F.3d. 256, 265 (1st Cir. 2012).  This has been interpreted to require a plaintiff to demonstrate: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct."  Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997) (citing Sociedad de Gananciales v. Gonzalez Padin, 17 P.R. Offic. Trans. 111, 125 (1986)).

To establish a *prima facie* case of medical malpractice, "a plaintiff must establish (1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm."  Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997) (citing Lama v. Borras, 16 F.3d 473, 478 (1st Cir.1994)); Rolon-Alvarado v. Mun. of San Juan, 1 F.3d 74, 77 (1st Cir. 1993).  Satisfying these elements requires a plaintiff to establish "that the care afforded did not meet the professional requirements generally acknowledged by the medical profession."  Rodríguez-Diaz v. Seguros Triple-S, Inc., 636 F.3d 20, 23 (1st Cir. 2011) (citing Santiago Otero v. Méndez, 135 P.R. Dec. 540, 1994 P.R. Office. Trans. 909 (1994)).  As such, this almost invariably requires the plaintiff to introduce expert testimony to establish the degree of care and scientific knowledge that is required by the medical profession in

Civil No. 13-1348 (DRD)

the treatment of a specific type of patient such as the one in the present case.  See Rodríguez-Diaz, 636 F.3d at 23.  There is, of course, an exception to this rule, where the jury's common sense can occasionally close the gap and determine that the care afforded did not meet minimal standards, but for purposes of this opinion, those exceptions are irrelevant.  See id.; Rolon–Alvarado v. Municipality of San Juan, 1 F.3d 74, 79 (1st Cir.1993) (offering examples of possible exceptions).

With respect to the disclosure of such an expert witness in a medical malpractice case, pursuant to Rule 26 of the Federal Rules of Civil procedure, the plaintiff must disclose to all other parties in the case the expert's identity and submit a written report by the expert including a statement of all of the opinions that the expert will express at trial and the reasons for them.  See FED. R. CIV. P. 26(a)(2)(A)-(B); Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009).  Absent a stipulation or a court order, these disclosures must be made at least ninety days before the date set for trial, or if the evidence is intended solely to contradict or rebut another party's expert evidence, within thirty days after the other party's disclosure.  See FED. R. CIV. P. 26(a)(2)(D).

Turning to the present case, the Court notes that this case will likely require the testimony of an expert for Plaintiffs to establish that CHSC's treatment of Cardona did not meet the professional requirements generally acknowledged by the medical profession.  Indeed, Plaintiffs acknowledge as much.  (Docket No. 39 at 6.)  However, in light of the fact that this case has not had an initial settlement and scheduling conference nor has discovery begun, the Court has not set a deadline for the parties' disclosure of their expert witnesses.  Therefore, the court rejects CHSC's request for dismissal based upon Plaintiffs' failure to disclose an expert witness and report at this stage in the litigation.  The deadline will be set in due course.

28

**Civil No. 13-1348 (DRD)**

Accordingly, for the reasons set forth above, the Court **DENIES** CHSC's motion at Docket No. 36.

**IV.      Conclusion**

In sum, the Court **GRANTS in part** and **DENIES in part** Dr. Jimenez's motion to dismiss at Docket No. 30, **DENIES** Negrón's motion to dismiss at Docket No. 34, and **DENIES** CHSC's motion at Docket No. 36.

**SO ORDERED.**

In San Juan, Puerto Rico this 27th day of March, 2015.

*s/ Daniel R. Domínguez*
DANIEL R. DOMINGUEZ
United States District Judge

29